419 So.2d 320 (1982)
Edmund Dorr GRIFFIN, Petitioner,
v.
STATE of Florida, Respondent.
Scott William LAWRENCE and Charles Axonowitz, Petitioners,
v.
STATE of Florida, Respondent.
Nos. 59964, 60023.
Supreme Court of Florida.
August 26, 1982.
*321 Richard L. Jorandby, Public Defender and Anthony Calvello, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for Griffin.
J. David Bogenschutz of Varon & Stahl, Hollywood, for Lawrence.
Jim Smith, Atty. Gen. and Max Rudmann, Asst. Atty. Gen., West Palm Beach, for respondent.
ADKINS, Justice.
We have for review decisions by the District Court of Appeal, Fourth District (Griffin v. State, 389 So.2d 261 (Fla. 4th DCA 1980), and Lawrence v. State, 388 So.2d 1250 (Fla. 4th DCA 1980)), which pass upon questions that it certifies are of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
As part of an October, 1977, drug bust, two undercover agents from the Ft. Lauderdale, Florida, police department met with several men, including petitioners Lawrence and Griffin, at the latter's home to complete a previously arranged cocaine purchase. During the transaction one of the agents left the home, ostensibly to get a scale and money from his car, and returned accompanied by several other officers. The agent and policemen did not knock or in any other way announce their presence before entering the house and arresting those involved in the sale, nor did they have arrest or search warrants.
At their trial on various charges stemming from the transaction, petitioners' motion to suppress physical evidence was denied. Petitioner Lawrence pled nolo contender to delivery of cocaine and was placed on probation for five years with the first year to be spent in jail. On appeal, the fourth district upheld the trial court's judgment and certified two questions as being of great public importance:
1. When an individual invites more than one undercover law enforcement officer into a dwelling or other building in order to transact felonious business and one officer leaves the premises on the pretext of furthering the felonious transaction (but in reality to obtain reinforcements) while another officer or officers remain inside the premises, does the officer who left have an implied invitation to reenter the premises freely or must he comply with the provisions of Section 901.19(1), Florida Statutes (1979), in order to make a lawful reentry?
2. Does the holding of the Supreme Court of the United States in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), prohibit the sort of reentry described in question (1) even though the officer seeking reentry complies with Section 901.19(1)?
Petitioner Griffin pled nolo contendere to criminal conspiracy and was placed on five years probation with the first six months to be spent in jail. The fourth district affirmed that judgment on the authority of Lawrence and on petition for rehearing again certified the two questions above.
The answer to the first question, under the facts in this case, is that the officer that left the house had an implied invitation to reenter and did not have to "knock and announce" pursuant to section 901.19(1), Florida Statutes. Several factors convince us so.
First, there is the nature of the transaction involved. Petitioners invited the undercover *322 agents into the home to buy drugs. The deal would not be complete until the drugs were paid for, so when one of the agents went outside to his car under the pretense of getting a scale and the purchase money, his return was doubtlessly expected. In fact, it is probably safe to say that his reentry to the house was eagerly desired by petitioners  those who come to pay off debts seem universally welcome. Although there was no express or verbal invitation to reenter the home, the consent to do so was implicit.
That the agent did not return for the purpose intended by those inside does not vitiate the consent given him. There is no protection in a case like this from mistaken faith in one's associates. Hoffa v. United States, 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966). The initial entry by the agents could not be held improper simply because it was the result of trickery, and the same reasoning validates the subsequent reentry.
Petitioners' argument that there was only consent to the initial entry of the agent as a "guest" and not to his subsequent entry in an "official capacity" is unconvincing. The agents were acting in an official capacity throughout the entire transaction regardless of petitioners' perceptions of the state of things, and the arrests were the result of petitioners' misplaced confidence in inviting the agents into the home. The distinctions between "guest" status and "official" status are irrelevant.
Related to this issue is the matter of the back-up officers that accompanied the agent when he returned to the house. Petitioners argue that even if the returning agent had consent to enter the home, the police accompanying him did not. With regard to the additional police, however, petitioners are again simply victims of their misplaced trust. The agent was free to bring others with him when he utilized his invitation to return, and the policemen were not acting improperly so long as they were in his company. Petitioners did not expect the men with whom they dealt to be officers of the law, much less for one of them to show up with reinforcements, but in opening the home to their associates and business contacts, they put themselves in the position of having to accept the consequences.
In holding that the agent had permission to reenter the home, we do not mean to suggest that once the authorities have been admitted to a residence they have carte blanche to return and enter at their own will. What we are saying is that under the facts of this particular case, the authority to reenter was implicit. The agent left the house for a very short period of time, his return was expected and encouraged, and his return was a necessary part of the uncompleted, ongoing transaction pursuant to which he had first been invited. In this situation, he did not need to comply with the provisions of section 901.19(1), Florida Statutes, before reentering petitioner Griffin's home.
The second question certified by the district court, concerns whether the United States Supreme Court's decision in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), prohibits the sort of reentry described in the first question even though the reentering officer complies with section 901.19(1). Payton dealt with a non -consensual entry, which is not the situation in this case. Defendant, while in his home, committed a felony in the presence of the officer. This is an exigent circumstance which allows a warrantless arrest in the home without violating the Payton rule.
Having considered the district court's opinion in light of our answers to the certified questions, the decisions therein are approved.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, SUNDBERG and McDONALD, JJ., concur.